IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN J. EVANS, as Personal )
Representative of the Estate of )
Dorothy Lorene Evans, Deceased, )
)
    Plaintiff, )
)
vs. ) Case No. 11-CV-802-JED-FHM
)
GENERAL ELECTRIC COMPANY and )
DAEWOO ELECTRONICS AMERICA, )
INC., and BEST BUY STORES, L.P. and )
BBC PROPERTY CO. )
)
    Defendants. )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO LIMIT THE SCOPE OF DR. MARCUS DURHAM'S TESTIMONY**

The Plaintiff, John J. Evans, as Personal Representative of the Estate of Dorothy Lorene Evans, respectfully submits this Response to the Defendants Motion in Limine to Limit the Scope of Marcus Durham's Testimony (Doc. 132), which was filed in this case on March 20, 2014. The Plaintiff advises the Court that he has no intention of calling Dr. Durham to testify regarding the spread of the fire through Ms. Evans' house. However, the Plaintiff does oppose the Motion in Limine to the extent that Dr. Durham should be allowed to testify regarding the following subjects:

    1.    The fact that he examined the interior and exterior of Ms. Evans' house;

    2.    His personal observations in that examination;

    3.    His opinion that he did not see anything that provided a reason for him to disagree with Mr. Overton's assessment that the fire started in the kitchen;

    4.    His opinions regarding his interpretation of the physical evidence and condition of the microwave itself after the fire; and

    5.    His opinions that the electrical fault in the microwave was the origin of the fire that killed Ms. Evans.

**ARGUMENTS AND AUTHORITIES**

A. **Dr. Durham Should Be Allowed To Testify That He Would Not Have Accepted Mr. Overton's Opinion Regarding Where The Fire Originated If He Saw Contrary Evidence; However, He Saw Nothing At The House That Made Him Question Mr. Overton's Finding That The Fire Started In The Kitchen.**

First, Dr. Durham is himself a registered fire investigator and is competent to evaluate evidence regarding the spread of a house through a structure. (Durham CV, Exhibit "1"). Although Dr. Durham deferred to Randall Overton in determining the area of origin of the fire, Dr. Durham did inspect and photograph the entire premises of the house during his investigation.

Dr. Durham will testify that he considered what he saw at the scene of the house in reaching his opinions and dependently evaluated where the burn patterns at the house and found them consistent with Mr. Overton's conclusion that the fire started in the kitchen. Dr. Durham even made a statement to that effect in his expert report, where he stated that, "From my interview with Mr. Overton, *and from my inspection*, the fire originated near the back door, along the east wall toward the north end of the kitchen in the vicinity of a microwave oven." (October 13, 2011 Expert Report of Dr. Durham, Exhibit "2", p. 2)(emphasis added).

Dr. Durham would not have blindly accepted any information or conclusions provided to him by Mr. Overton if he found they were inconsistent with his own observations. Here, Dr. Durham reviewed the scene. In his opinion, everything he witnessed was consistent with the fire having originated in the kitchen. Dr. Durham should thus be allowed to testify and explain to the jury that he did not see any physical evidence that gave him reason to believe that the fire started elsewhere.

B. **Dr. Durham Should Not Be Prohibited From Interpreting The Burn Pattern Evidence In And On The Microwave Itself Or From Opining That The High-Resistance Fault In The Microwave Set The Microwave On Fire.**

The second limit G.E. seeks to place on Dr. Durham's testimony involves the dividing line between the focus of Dr. Durham's testimony and the testimony of the other experts. Ignoring G.E.'s baseless *Daubert* challenge, G.E. acknowledges that Dr. Durham can testify regarding the "alleged electrical cause of the fire." However, G.E. seeks to exclude Dr. Durham's testimony "regarding the origin or progression of the fire." It is unclear from G.E.'s motion what it contends constitutes the

2

distinction between these supposed two categories of testimony.

Except to the limited extent of inquiring whether Dr. Durham saw anything at the house that makes him think the fire started outside of the kitchen (discussed above), the Plaintiff has no intention of asking Dr. Durham to testify about how the fire moved through the house. Instead, Mr. Overton and Dr. Lilley will testify regarding the movement of the fire through the house and the area where the fire started. They will, for example, interpret burn patterns to explain the jury why the physical evidence points to the kitchen as the area of origin.

Nevertheless, in interpreting the evidence inside the microwave, Dr. Durham intends to testify about the "origin and progression of the fire" *inside the microwave itself.* Dr. Durham's testimony will be to educate the jury about how the physical condition of the microwave after the fire indicates that it caught fire at a particular spot where a high-resistance fault occurred. Some of that evidence includes an analysis of the oxidation patterns on both the outside and inside of the microwave.

Dr. Durham should be allowed to explain to the jury the basis of his opinions that:

1. The oxidation patterns indicate that the microwave had an *internal* heat source. (Durham Depo., Exhibit "3", p. 78);

2. The physical condition of the microwave indicates it experienced intense local heat near the magnetron area. (*Id.*, p. 82);

3. There was evidence of electrical arcing on a particular wire where it passed over a metal lip between the internal cavity and the control section of the microwave. (*Id.*, pp. 157-163);

4. The arcing was caused when insulation on the wire deteriorated due to stress and vibrations. (*Id.*);

5. The physical evidence indicates that the high resistance fault became extremely hot and even approached 20,000 degrees Fahrenheit, over 20 times hotter than what would occur if the microwave experienced external heat from an encroaching house

   fire. (*Id*., pp. 171-172); and

6.  The fire spread to the insulation and plastics inside the microwave which started the house fire. (Expert Report of Dr. Durham, Exhibit "2").

Dr. Durham described that process in his expert report. He also gave a deposition in which G.E.'s counsel was allowed to inquire regarding his opinions about those facts and the chain of events that led to ignition inside the microwave that started the fire that killed Ms. Evans.

 An electrical expert who is retained to evaluate the electrical system that is suspected of causing the fire may nevertheless be qualified to identify the cause of a fire. *See, e.g., Argonaut Ins. Co. v. Samsung Heavy Industries, Inc.*, 929 F.Supp. 2d 159, 167-168 (N.D. NY 2013).

 To the extent that G.E. is trying to limit Dr. Durham's testimony on the grounds that these subjects are not within the scope of Dr. Durham's area of expertise, then G.E.'s Motion should be denied.

## CONCLUSION

 The Plaintiff does not intend to call Dr. Durham to testify generally as to the area of origin of the fire. However, G.E.'s Motion should be denied to the extent that it seeks to prevent Dr. Durham from testifying to the following:

1.  The fact that he examined the interior and exterior of Ms. Evans' house;
2.  His observations in that examination;
3.  His opinion that he did not see anything that provided a reason for him to disagree with Mr. Overton's assessment that the fire started in the kitchen (and that it would have been incumbent upon him to point out any such evidence if he had seen it);
4.  His interpretation of the physical evidence and condition of the microwave itself after the fire; and
5.  His opinion that the electrical fault in the microwave was the origin of the fire that killed Ms. Evans.

        Respectfully submitted,

        TAYLOR, RYAN, MINTON, VAN DALSEM,
         & WILLIAMS, P.C.

        By  s/Robert Scott Williams
          ROBERT TAYLOR - OBA #8879
          NEIL D. VAN DALSEM - OBA #16326
          ROBERT SCOTT WILLIAMS - OBA #19974
          Suite 850 Boulder Towers
          1437 S. Boulder Ave.
          Tulsa, OK  74119-3640
          (918) 749-5566

## CERTIFICATE OF MAILING

     I, ROBERT SCOTT WILLIAMS, hereby certify that on the __23rd__ day of April, 2014, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John H. Tucker
Randall E. Long
Kerry R. Lewis
100 West 5th Street
Suite 400
Tulsa, OK 74103
Attorneys for General Electric
and Daewoo Electronics

        s/Robert Scott Williams
          ROBERT SCOTT WILLIAMS