## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN J. EVANS, as Personal )
Representative of the Estate of )
Dorothy Lorene Evans, Deceased, )
                            )
      Plaintiff, )
                            )
vs. )   Case No. 11-CV-802-JED-FHM
                            )
GENERAL ELECTRIC COMPANY and )
DAEWOO ELECTRONICS AMERICA, )
INC.,   and BEST BUY STORES, L.P. and )
BBC PROPERTY CO. )
                            )
      Defendants. )

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
### EXCLUDE THE TESTIMONY OF DR. DAVID LILLEY

The Plaintiff, John Evans, respectfully submits this Response to Defendant General Electric

Company's *Daubert* Motion to Exclude the Opinions and Testimony of Plaintiff's Expert, David

Lilley (Docket No. 128), which was filed on March 20, 2014.  For reasons explained below, G.E.

has provided no valid reason to exclude Dr. Lilley's testimony.

### THE RELEVANT FACTS

On December 17, 2010, a fire destroyed Dorothy Evans' house.  Ms. Evans was 94 years old

and blind.  She died in the fire.  Her homeowners insurer, Farmers Insurance Company, contacted

an experienced fire origin and cause investigator, Randall Overton.  Farmers asked Mr. Overton to

try to determine the cause of the fire.  Mr. Overton inspected the scene of the fire.  His initial

impression was that burn patterns indicated the fire started in the kitchen, near where a G.E.

microwave oven had been located.  That room is located on the north end of Ms. Evans' house.  Mr.

Overton continues to opine that the fire started in the kitchen, and he will be called as an expert

witness by the Plaintiff at trial.  G.E. has not even attempted a *Daubert* challenge to Mr. Overton's

conclusion that the fire started in the north end of the house, in the kitchen, where the microwave

was located.

Mr. Overton thought that the source of the fire could be electrical, so he contacted Dr.

Marcus Durham, who is an electrical engineer with extensive experience evaluating electrical

failures in products and structures that have caused fires.  Dr. Durham's background and opinions in this case are discussed at length in the Plaintiff's Response to G.E.'s Motion to Exclude the Testimony of Dr. Marcus Durham, which is contemporaneously filed and incorporated by reference. In a nutshell, Dr. Durham concludes the fire started because a wire inside the microwave developed damage to its insulation, most likely because it had been installed in a manner that placed physical stress on the wire where it draped over a metal edge.  The improper installation ultimately caused the wire's insulation to fail, leading to a high-resistance fault that caused the fire.  The evidence of this electrical fault consists of a melted wire and evidence that part of the wire reached extremely high temperatures that approached 20,000 degrees Fahrenheit.

G.E. has not identified what started the fire.  It defends this case based on an assertion that the fire started in the home's den/living room and then spread to the kitchen.  G.E.'s logic is that if the fire started in the den/living room, then it obviously did not start in the microwave.  For support of the theory that the fire started in the den/living room, G.E. hopes to rely on the testimony of two witnesses:  a state fire investigator named Terry Ferrell, and a fire investigator it hired named Joe "Jody" Cooper.  Mr. Ferrell and Mr. Cooper conclude that the fire started in the den primarily because that area of the house experienced the most significant charring in the fire.

Because of this disagreement between the experts, the Plaintiff hired Dr. David Lilley to analyze the evidence regarding how the fire moved through the house and the likely area of origin. Dr. Lilley is a recently retired professor of engineering at Oklahoma State University.  (Lilley C.V., Exhibit "1")  In connection with that university's well-respected Fire Protection program, he has engaged in extensive studies of fire dynamics. (*Id.*)  Dr. Lilley has conducted many experiments in which structures were set on fire and Dr. Lilley documented and studied how the fire spread.  (David Lilley Depo., Exhibit "2", p. 48).  He has been to approximately 50 fire scenes.  (*Id*, pp. 33-34). He has written over 100 technical engineering research papers relating to fires and approximately 150 papers on various aspects of combustion aerodynamics, flames, fluid dynamics, heat transfer, and computer simulation.  (Lilley Report, Exhibit "3", pp. 1-2).  He has taught a course regarding fire

dynamics widely around the country since 1995.  (*Id.,* p. 1).

The focus of Dr. Lilley's opinions is on fire dynamics, meaning how the fire started and spread.  (David Lilley Depo., Exhibit "2", pp. 25-26, 156).  He can identify the area of origin of a fire without knowing the cause.  (*Id*., p. 37).

Dr. Lilley holds opinions regarding the method of progression of the fire.  (*Id*., pp. 26-27; *see generally* Dr. Lilley's Report, Exhibit "3").  He concludes that the fire started in the kitchen and moved into the den instead of starting in the den and moving into the kitchen.  (David Lilley Depo., Exhibit "2", p. 27).  It is his opinion that the fire started in the kitchen based solely on the physical evidence and his analysis of the fire dynamics.  (*Id*., pp. 124-125).  His opinion regarding fire dynamics does not rest upon Dr. Durham's opinion about the microwave oven starting the fire.  (*Id*., pp. 124-125).

The evidence that Dr. Lilley relies upon to determine the fire started in the kitchen includes the following:

     a.    There is evidence that the fire substantially involved the kitchen and eastern part of the garage.  (*Id.*, pp. 126-127).

     b.    The refrigerator on the west side of the kitchen appears to be leaning towards the east, potentially because of heat from the east going directly onto the front of the refrigerator.  (*Id.*, pp. 128, 224-225).

     c.    If the fire started in the den you would expect to see more devastation in all directions from the den including much more significant damage into the south end of the den and the house.  (*Id.*, pp. 129, 141).

In short, the focus of Dr. Lilley's analysis is the *movement* of the fire, not its cause.

Dr. Lilley also explains the flaws in the analysis provided by Mr. Ferrell and Mr. Cooper. Dr. Lilley disagrees with the general idea that it is proper to identify the area of origin of the fire as the area of the most devastation.  (*Id*., pp. 140-141).  It is often the case that the area of most intense damage in a fire is the place of origin, but there are many instances where that is not true.  (*Id*., p.

176).  In his experience, there will often be a lot of damages in places simply because there is a high fuel load.  (*Id.*, p. 176).  In his opinion, it is improper to "jump to the conclusion" that the area of most damage is also the area of origin of the fire.  (*Id.*, p. 177).  An investigator instead should "[c]onsider how the fire could have got there then caused more damage in that area."  (*Id.*, p. 177).  Dr. Lilley concludes that the damage in the den can be explained due to a very high fuel load in that room.  (*Id.*, pp. 119-120).

Although Dr. Lilley's interpretation of the fire pattern evidence is independent of the evidence that the fire started in the microwave, Dr. Lilley also did inspect the microwave.  (*Id.*, p. 44).  He relied on Dr. Durham's opinions regarding the microwave being an ignition source.  (*Id.*, pp. 186-187).  However, he personally agrees that the evidence of shorting inside the microwave is consistent with an ignition source for the fire.  (*Id.*, pp. 110-111).  Also there are vents on the back of the microwave that could allow flames to escape from an internal fire in the microwave.  (*Id.*, pp. 111-112).

It is easy to understand why G.E. does not want the jury to hear those opinions.  However, it has failed to identify any valid reason to exclude Dr. Lilley's testimony.

## ARGUMENTS AND AUTHORITIES

A.      **The Court's Role Is To Exclude Opinions That Constitute Junk Science, Not To Weigh The Evidence Or Usurp The Jury's Role As Fact-Finder.**

Both parties have now submitted briefs that set forth the "Black Letter Law" regarding *Daubert* and its progeny, and both are trying to exclude testimony of their adversaries' experts.  As might be expected, the *Daubert* briefs filed thus far emphasize the aspects of *Daubert* that promote the *exclusion* of expert testimony.

*Daubert* is not an invitation for this Court to decide the merits of this case under the guise of excluding expert testimony.  The function of a *Daubert* hearing is not to replace a trial on the merits.  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).  Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509

4

U.S. at 596.  This Court should admit expert testimony "if there are 'good grounds' for the expert's conclusion" notwithstanding a judge's personal belief that there are better grounds for some alternative conclusion. *Heller v. Shaw*, 167 F.3d 146, 152–53 (3d Cir. 1999) (internal citations omitted).

As will be explained, Dr. Lilley's opinions are not the least bit "shaky" and there are no better grounds for some alternative conclusion.  His opinions have a reliable basis in science and his vast experience, make sense, and should be admitted at trial.

**B.   Dr. Lilley Is A Highly Qualified Expert In Identifying And Determining The Causes Of Electrical Failures.**

Rule 702 requires that a witness have "expert[ise] resulting from knowledge, skill, experience, training, or education."  G.E. concedes, as it must, that Dr. Lilley is qualified to testify as an expert witness in this case.  G.E. instead argues that even though Dr. Lilley is extremely qualified and an expert, his opinions *in this particular case* are unreliable.  However, in evaluating the reliability issue, this Court should recognize that Dr. Lilley is highly qualified to testify regarding the movement of the fire.

It is proper for this Court to consider Dr. Lilley's qualifications when evaluating the particular opinion or testimony proffered in this case. *United States v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983).   Witnesses qualifications, standing alone, do not establish reliability under *Daubert*. However, the Advisory Committee Note on Rule 702 also provides this guidance:

> Nothing in this amendment is intended to suggest that experience alone or experience in conjunction with other knowledge, skill, training, or education may not provide sufficient foundation for expert testimony.  To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. . . . .

Moreover, in some fields, experience alone is the "predominant, if not sole, basis for a great deal of reliable expert testimony." *Id*.

Dr. Lilley's extensive experience, standing alone, establishes that some of his opinions have a reliable basis.  He spent much of his career studying the thermodynamics of fires.  Having conducted many real-life experiments in which he studied how fire moves through structures, he is

in a unique position to analyze fire movement.

**C.      Dr. Lilley Analyzed The Evidence In A Manner Consistent With NFPA 921.**

A *Daubert* challenge is supposed to address whether an expert opinion has a reliable basis, as opposed to constituting "junk science. As has been explained in other filings, the primary recognized standard for reliable investigations regarding the origin and cause of fires. Federal courts universally agree that NFPA 921 provides a standard that satisfies the requirements of *Daubert*. As one court succinctly explains:

> [B]ecause the methodology described in NFPA 921 has been peer reviewed, is generally accepted in the field of fire investigation, and incorporates the classic scientific methodology of "generating hypotheses and testing them to see if they can be falsified", the methodology is reliable within the meaning of Rule 702, Fed.R.Evid., and *Daubert*.

*U.S. v. Aman*, 748 F.Supp.2d 531, 536 (E.D. Va. 2010)(internal citation omitted).  NFPA provides a clear standard for this Court to use to evaluate Dr. Lilley's testimony in light of *Daubert*. *See, e.g., Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1057–58 (8th Cir. 2005); *Travelers Prop. & Cas. Corp. v. GE*, 150 F.Supp.2d 360, 366 (D. Conn. 2001); *Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*, 208 F.Supp.2d 423, 426 (S.D. N.Y. 2002) (finding the NFPA 921 standards reliable under *Daubert* ); *Hoang v. Funai Corp.*, 652 F.Supp.2d 564, 567, 570 (M.D. Pa. 2009); *Tunnell v. Ford Motor Co.*, 330 F.Supp.2d 707, 725 (W.D. Va. 2004) (observing that many courts have recognized NFPA 921 as a peer reviewed and generally accepted standard in the fire investigation community).

Consistent with that case law, federal courts routinely agree that opinions regarding the area of origin of a fire and its spread has a reliable basis when an expert has followed the standard procedures in evaluating burn pattern evidence.  *See, e.g.,  Hickerson*, 470 F.3d at 1256–58 (fire expert's methods deemed reliable when he examined burn and damage patterns, considered testimony, and identified a point of origin, despite an absence of lab tests); *Argonaut Ins. Co. v. Samsung Heavy Industries Co. Ltd.*,  929 F.Supp.2d 159, 166 -167 (N.D. N.Y., 2013)(rejecting *Daubert* challenge to expert testimony regarding the origin and cause of a fire when the insured

conducted a thorough investigation consistent with NFPA 921 even though no tests were done).

In this case, Dr. Lilley has explained that he complied with NFPA 921 when he analyzed the available evidence.   (Lilley Depo., Exhibit "2", p. 38).  His opinions have a reliable basis.

**D.    This Court Cannot Exclude Dr. Lilley's Testimony Merely Because G.E. Hopes To Dispute Some Of The Factual Grounds That Underlie Dr. Lilley's Opinions.**

**1.    G.E.'s Claim That Dr. Lilley Misunderstands The Underlying Facts Provides An Unlikely Basis To Exclude His Expert Opinions.**

At pages 4 to 8 of its Brief, G.E. in substance argues that Dr. Lilley should not be allowed to testify because his understanding of the underlying facts is wrong.  G.E. argues that Dr. Lilley has two basic facts wrong:

1.    At pages 5-7, G.E. argues that Dr. Lilley has misinterpreted photos of the fire that were taken while the fire was in progress.  In that regard, G.E.'s primary assertion is that Dr. Lilley is incorrect when he finds that the fire first vented on the north end of the house, near where the kitchen and microwave were located.  G.E. contends that the fire actually first vented outside the house at a location in the den/living room near the chimney.

2.    At pages 7-8, G.E. argues that Dr. Lilley misunderstood the directions from which the firefighters attacked the fire, which G.E. seems to think matters to an analysis of where the fire started.

As will be explained below, G.E. misunderstands the facts.  In one instance, G.E. is not merely wrong, but is actively trying to suppress this Court's and the jury's access to the relevant evidence.

However, it is also significant that these debates about the facts that underlie Dr. Lilley's opinions do not provide fertile grounds for a legitimate *Daubert* challenge.  *Daubert* and F.R.E. 702 require that Dr. Lilley's  opinions be grounded upon sufficient facts and data. The "facts and data" that an expert may consider is broad enough to include: reliable opinions of other experts, hypothetical facts supported by the evidence, and facts that may be otherwise admissible. Advisory Committee Note to Fed.R.Evid. 702.  Expert opinions should not be excluded merely because the

7

facts underlying an opinion are disputed.  "The emphasis ... on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *Id*.

The Tenth Circuit has directed trial courts to assess the sufficiency of the facts and data used by an expert by conducting a quantitative analysis, not by a qualitative analysis.  *United States v. Lauder*, 409 F.3d 1254, 1264 n. 5 (10th Cir. 2005).  The "inquiry examines only whether the witness obtained the amount of data that the methodology itself demands." *United States v. Crabbe*, 556 F.Supp.2d 1217, 1223 (D. Colo. 2008). When evaluating whether Dr. Lilley's views are supported by sufficient facts, this Court is not to examine the reliability of the facts, which is a question going to the weight that should be given to the opinion by the jury.  *Lauder*, 409 F.3d at 1264.

A federal court should reject a challenge to expert opinion testimony regarding the area of origin of a fire that amounts to disagreements regarding the underlying facts.  For example, in *Occidental Fire & Cas. of North Carolina v. Intermatic Inc.*,  2013 WL 4458769, *2 (D. Nev., 2013), the defendant argued the plaintiff's expert witness testimony was "unreliable because he consulted only one witness in determining the fire's area of origin."   The court rejected this argument, reasoning instead that:

> Even a cursory reading of the [NFPA 921] guidelines makes clear that this argument against Peak's method of fire investigation holds no water. Section 17.2.1.2 of the NFPA states clearly that "a single item, such as an irrefutable article of physical evidence or a credible eyewitness to the ignition ... may be the basis for a determination of origin." This rule makes clear that there are circumstances in which a sole witness statement would be enough to validate a fire investigation under the NFPA 921 method. Because defendant's argument is incorrectly rooted in the premise that reliance on a single witness statement necessarily violates the NFPA 921 method, this argument for excluding Peak's testimony is clearly no more than smoke and mirrors.

*Id*.

Put simply, G.E. is engaging in a misguided  effort by challenging the admissibility of Dr. Lilley's opinions by arguing for an alternative version of the underlying facts, and that he should have considered different evidence.

**2.      Dr. Lilley Is Correct When He Concludes That The Fire First Vented In The North End Of The House Near The Kitchen That Contained The Microwave That Started The Fire.**

To make matters worse, G.E. is the one who appears to have the facts wrong.  To a large extent, G.E. wants to criticize Dr. Lilley because it asserts that he failed to consider a statement from Lisa Hall that the fire first vented through the roof in the area near the chimney in the den.  That is itself wrong.  Dr. Lilley testified that he considered Ms. Hall's report that the fire had vented near the chimney of the house, but he concluded that the photographs he reviewed showed the fire had vented in many different places.  (David Lilley Depo., Exhibit "2", p. 53).

Moreover, G.E. ignores an account from John Karr, the first person on the scene who says that the fire first vented on the north end of the house, in the very location where Dr. Lilley says.  As has been explained in Plaintiff's Response to General Electric Company's Motion to Strike Plaintiff's Notice to Add John Karr to his Final Witness List, the first person to arrive at the scene of the fire was John Karr.

On the date of the fire, Mr. Karr was driving down the street near Ms. Evans' home.  (John Karr Recorded Statement, Exhibit. "4"; John Karr Affidavit, Exhibit "5").  Mr. Karr witnessed smoke billowing from the eaves of Mrs. Evans' home.  (*Id*.).  Mr. Karr, a volunteer fire fighter with 25 years of experience, immediately turned off the gas line and called emergency services.  (*Id*.).  Thereafter, Mr. Karr witnessed fire breaking through the northeast corner of the house.  (*Id*.).  At that time, the northeast corner was the only point where fire was breaking through the exterior of the home.  (*Id*.).

G.E. has known about Mr. Karr's account since January 10, 2011, when its general counsel, Romelia Leach, interviewed him.  Nevertheless, it now attacks Dr. Lilley's opinions by asserting (falsely) that Dr. Lilley did not consider the account of Ms. Hall, who arrived on the scene *after* Mr. Karr.  Moreover, G.E. is simultaneously urging the Court to exclude Mr. Karr as a witness because the undersigned counsel did not learn about Mr. Karr until late in the process of this lawsuit.

At pages 7-8 of its Brief, G.E. argues that Dr. Lilley misunderstood the directions from which the firefighters attacked the fire, which G.E. seems to think matters to an analysis of where the fire

9

started.  However, G.E. admits that Dr. Lilley reviewed many photographs that were taken as the fire department arrived and put the fire out.  G.E. does not explain how the way the fire was fought would change the fact that the fire first vented at the north/kitchen end of the house.  G.E. cannot say with any certainty that the direction the fire moved was meaningfully affected by the firefighters "pushing" the fire into the kitchen.  It provides no scientific basis for the notion that spraying water in the south end of the house would have pushed the fire the other direction.  Assuming for argument's sake that G.E.'s theory that firefighters pushed the fire into the kitchen has any basis in reality at all, G.E.'s argument goes to the weight of Dr. Lilley's opinions, not their admissibility.

**E.      Dr. Lilley's Opinions Cannot Be Excluded Under The Theory That He Failed To Consider Alternative Ignition Sources.**

At pages 8-10 of its Brief, G.E. urges this Court to exclude Dr. Lilley's opinions on the ground that he "failed to consider and exclude other potential ignition sources" for the fire. That argument fails for several reasons.

First, Dr. Lilley plainly testified that his opinion that the fire started in the kitchen was based solely on the physical evidence and his analysis of the fire dynamics.  (David Lilley Depo., Exhibit "2", pp. 124-125).  His opinion regarding fire dynamics, though consistent with, is not dependent upon Dr. Durham's opinion about the microwave oven starting the fire.  (*Id*., pp. 124-125).

Second, Dr. Lilley can rule out any ignition sources in the den/living room, because he finds that the fire patterns are inconsistent with the fire starting in the living room.  For example, Dr. Lilley explains that he can eliminate smoking materials as the cause of the fire because it does not match to where he believes the fire started.  (*Id*., p. 102).  The same would be true for any other possible cause of the fire in the living room.  Essentially, all of the fire investigators who will testify in this case agree that it is proper to rule out causes of the fire that are outside of a determined area of origin.  Mr. Overton also determined the area of origin to be in the house's kitchen based on burn pattern evidence, but G.E. has not attempted to exclude his testimony on the grounds that he failed to consider alternative sources of ignition.

Third, to the extent Dr. Lilley did consider Dr. Durham's finding that there was a high-

resistance fault in the microwave, his testimony cannot be excluded merely because he relied upon Dr. Durham's opinions. The Advisory Committee Note to Fed.R.Evid. 702 directs that the "facts and data" that an expert may consider is broad enough to include "reliable opinions of other experts, hypothetical facts supported by the evidence, and facts that may be otherwise admissible."

It is particularly common for experts to rely upon each other in cases involving issues relating to the cause of a fire. This reality was recognized by the court in *Argonaut Ins. Co. v. Samsung Heavy Industries Co. Ltd.*, 929 F.Supp.2d 159, 168 (N.D. N.Y.,2013). That court rejected a challenge to an electrical engineer's testimony that asserted the expert could not rely on the opinions of an origin and cause expert. The *Argonaut* court recognized that an electrical engineer is entitled to rely upon a cause and origin expert's findings with respect to cause and origin. *Id.* The court generally agreed that experts "in fire cases often rely upon the observations of other experts in reaching their conclusions." *Id.* (quoting *Peerless Ins. Co. v. Marley Engineered Products LLC*, 2008 WL 7440158, *6 (E.D. N.Y.).

Finally, G.E. appears to forget that *it has not identified any alternative cause for the fire.* Once again, G.E. does not attempt to show what caused the fire. Its defense is that "we don't know what caused the fire, just that it was not our microwave." G.E. has not identified any "actual" cause of the fire that Dr. Lilley supposedly overlooked. It apparently wants the Court to assume that Dr. Lilley's opinions are completely unreliable because he failed to find something that G.E.'s experts cannot find.

Moreover, G.E. apparently hopes to convince the jury that the microwave did not experience a fault with electrical arcing based upon a theory that there was a dent in the top of the microwave – which is no longer there – that mashed the wire, melted it, and created the illusion that there was a high-resistance fault. (*See generally* the Plaintiff's Motion in Limine Regarding the Testimony of Hunter Sims, Doc.  ).

**F.      Dr. Lilley's Opinions Cannot Be Excluded On The Basis That He Did Not Consider Alternative Theories Of The Origin And Progression Of The Fire.**

Next, G.E. takes specific points that were covered in Dr. Lilley's deposition completely out of context to create a false impression that his testimony is somehow inconsistent or that he failed to consider particular facts.

First, G.E. claims that Dr. Lilley admitted that the refrigerator would have experienced similar damage if the fire had moved from the den to kitchen as would have occurred if the fire started in microwave and moved to the den.  Dr. Lilley clearly explains his view that the fire did not start in the den, because the south end of the house would have sustained more significant damage if that is where the fire started. Dr. Lilley's interpretation of the condition of the refrigerator is consistent with the *totality* of the physical evidence.

Second, G.E. asserts that Dr. Lilley should not be allowed to testify because he did not exclude the vent hood as a potential ignition source.  Dr. Lilley's opinion is focused on the area of origin of the fire, not its cause.  Moreover both Dr. Lilley and the electrical engineer hired by G.E., Hunter Sims, have testified that the vent hood does not appear to have experienced arcing that would have started the fire.  Dr. Durham examined the vent hood and found damage that was consistent with damage from external heat.  (Durham Depo., Exhibit "6", pp. 54, 83-84, 111-112).    He concludes that the vent hood got burned by the fire while it still had power, but the vent hood did not start the fire.  G.E.'s supposed expert, Mr. Sims, *agrees with Dr. Durham* that the condition of the wires in the vent hood "lend[s] itself more towards a conclusion of melting than it does arcing," (Sims Depo., Exhibit "7", p. 93).  He also did not see evidence of arcing that might cause a fire.  (*Id*., p. 104) and cannot  identify any actual fuel source that would allow a fire to start inside the vent hood  (*Id*., pp. 93-94).  It is not clear what evidence that the vent hood caused the fire Dr. Lilley has missed, since everyone appears to agree the vent hood did not cause the fire.

**G.      Dr. Lilley's Opinions Are Not Merely Cumulative Of Mr. Overton's Opinions.**

Finally, G.E. asserts that Dr. Lilley's opinions are cumulative of Mr. Overton's and should be excluded because it is cumulative.  Even if G.E.'s concern about cumulative evidence had some

basis – and it does not – it is very difficult to understand how Dr. Lilley's opinions could be deemed cumulative when the trial has not even started.  G.E. cannot possibly be entitled to a pre-trial Order in Limine that any evidence is cumulative when no evidence has been admitted.

However, the more significant point is that Dr. Lilley's testimony is different than Mr. Overton's. The focus of Dr. Lilley's opinions is on fire dynamics, which is his particular area of expertise. (David Lilley Depo., Exhibit "2", pp. 25-26,156).  By contrast, Mr. Overton's job was to conduct a basic origin and cause investigation. (*Id.*, p. 157)).  It is anticipated that the trial testimony of Dr. Lilley will really be geared to explaining what is wrong with G.E.'s explanation for how the fire happened, as opposed to Mr. Overton's testimony explaining how he determined the fire started in the kitchen.  Specifically, Dr. Lilley's testimony will focus on the idea that the burn damage to the house would have been different than what is actually seen if the fire had started in the den/living room.  Dr. Lilley concludes that if the fire started in the den, there should be much more damage to the south end of the house.

### CONCLUSION

G.E. has either purposefully mischaracterized the scope of Dr. Lilley's investigation and his analysis, or it does not understand the relevant facts.  Plainly, there are no grounds to exclude Dr. Lilley's testimony under *Daubert.*  He is extremely well-qualified as an expert and conducted a very thorough investigation.  Finally, his opinions have a reliable basis, in that they are based on his extensive experience and a proper application of the procedures required by NFPA 921.  The Court should deny G.E.'s *Daubert* challenge regarding Dr. Lilley's testimony.

Respectfully submitted,

TAYLOR, RYAN, MINTON, VAN DALSEM,
 & WILLIAMS, P.C.

By   s/Robert Scott Williams
  ROBERT TAYLOR - OBA #8879
  NEIL D. VAN DALSEM - OBA #16326
  ROBERT SCOTT WILLIAMS - OBA #19974
  Suite 850 Boulder Towers
  1437 S. Boulder Ave.
  Tulsa, OK  74119-3640
  (918) 749-5566

13

## CERTIFICATE OF MAILING

I, ROBERT SCOTT WILLIAMS, hereby certify that on the __23rd__ day of April, 2014, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John H. Tucker
Randall E. Long
Kerry R. Lewis
100 West 5th Street
Suite 400
Tulsa, OK 74103
Attorneys for General Electric
and Daewoo Electronics

s/Robert Scott Williams
ROBERT SCOTT WILLIAMS

blc                                            14