IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN J. EVANS, as Personal Representative of the Estate of Dorothy Lorene Evans, Deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY and DAEWOO ELECTRONICS AMERICA, INC., and BEST BUY STORES, L.P. and BBC PROPERTY CO.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 11-CV-802-JED-FHM<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO LIMIT THE SCOPE OF RANDEL L. OVERTON AND DAVID G. LILLEY'S TESTIMONY**

The Plaintiff, John J. Evans, as Personal Representative of the Estate of Dorothy Lorene Evans, respectfully submits this Response to the Defendants Motion in Limine to Limit the Scope of Randel L. Overton and Dr. David G. Lilley's Testimony (Doc. 131), which was filed in this case on March 20, 2014. The Plaintiff has no intention of calling either Mr. Overton nor Dr. Lilley to analyze the specific electrical cause of the fire or to explain how the high-resistance fault inside the microwave developed.

However, the Plaintiff does oppose the Motion in Limine because Mr. Overton and Dr. Lilley should be allowed to testify regarding the following subjects:

    1.    That the physical evidence regarding the spread of the fire is consistent with the fire originating where the subject microwave was located; and

    2.    That they determined that the microwave itself exhibits physical signs that it experienced an internal electrical fault that caused the subject fire.

Furthermore, Mr. Overton and Dr. Lilley's opinions should not be excluded or limited if they, to a limited extent, rely on Dr. Durham's opinions and analysis.

## THE RELEVANT FACTS

On December 17, 2010, a fire destroyed Dorothy Evans' house. Ms. Evans was 94 years old and blind. She died in the fire. Her homeowners insurer, Farmers Insurance Company, contacted Randall Overton, an experienced origin and cause investigator to try to determine why the fire happened. He conducted multiple inspections of the house and its contents.

Mr. Overton concluded that the burn pattern evidence and other evidence regarding how the fire moved points to the microwave as an area of origin for the fire. (Randel Overton Depo., Exhibit "1", pp. 51, 117-118). He concludes that the fire in the microwave ignited the surrounding combustible materials including wood paneled wall, the cabinets, and the plastics on the exterior of the microwave. (*Id.*, p. 51). The fire spread from there to the den area laterally across the ceiling. (*Id.*, p. 51). Radiant heating then ignited the livingroom furniture. (*Id.*, p. 52). The fire then damaged a glass patio door, causing the fire to be well ventilated. (*Id.*, p. 52). G.E. has not even attempted a *Daubert* challenge to Mr. Overton's conclusion that the fire started in the kitchen where the microwave was located.

As part of his examination of the fire scene, Mr. Overton eliminated all available sources of heat to start the fire in the electrical branch circuitry, electrical components, electrical appliances, and everything that he could find in the den and the kitchen area. (*Id.*, pp. 110-111). However, he saw evidence of faulting on a wire inside a microwave that was in the kitchen near the area of origin. (*Id.*, p. 106). Specifically, a wire was welded to the inner metal frame of the microwave. (*Id.*, p. 123). He could see the anomaly inside the microwave the first day that he was at the scene of the fire. (*Id.*, pp. 140-141).

Mr. Overton thought that the source of the fire could be electrical, so he contacted Dr. Marcus Durham. Later, Dr. Durham reported to Mr. Overton that the arcing inside the microwave caused the fire. (*Id.*, pp. 78-79). For reasons that are detailed in other contemporaneous filings, Dr. Durham concludes that the fire happened due to the development of a high-resistance fault. (*See, e.g.,* the Plaintiff's Response to G.E.'s Motion to Exclude the Testimony of Dr. Marcus Durham,

which is contemporaneously filed and incorporated by reference).

After this lawsuit was filed, the Plaintiff also retained the services of Dr. David Lilley. He is a recently retired professor of engineering at Oklahoma State University. (Lilley C.V., Exhibit "2") The focus of Dr. Lilley's opinions for this case is fire dynamics, meaning how the fire started and spread. (David Lilley Depo., Exhibit "3", pp. 25-26, 156). In connection with OSU's well-respected Fire Protection program, Dr. Lilley has engaged in extensive studies of fire dynamics. (*Id.*) Dr. Lilley has conducted many experiments in which structures were set on fire and then documented and studied how the fire spread. (*Id.*, p. 48). He has been to approximately 50 fire scenes. (*Id.*, pp. 33-34). Dr. Lilley's expertise enables him to identify the area of origin of a fire without knowing the cause. (*Id.*, p. 37).

Dr. Lilley holds opinions regarding the method of progression of the fire in this case. (*Id.*, pp. 26-27). He concludes that the fire started in the kitchen and moved into the den instead of starting in the den and moving into the kitchen. (*Id.*, p. 27). His opinion that the fire started in the kitchen is based on the physical evidence and his analysis of the fire dynamics. (*Id.*, pp. 124-125). Dr. Lilley's opinion regarding fire dynamics does not rest upon Dr. Durham's opinion about the microwave oven starting the fire. (*Id.*, pp. 124-125).

The evidence that Dr. Lilley relies upon to determine the fire started in the kitchen includes the following:

(a) There is evidence that the fire substantially involved the kitchen and eastern part of the garage. (*Id.*, pp. 126-127).

(b) The refrigerator on the west side of the kitchen appears to be leaning towards the east, potentially because of heat from the east going directly onto the front of the refrigerator. (*Id.*, pp. 128, 224-225).

(c) If the fire started in the den he would expect to see more devastation in all directions from the den, including much more significant damage into the south end of the den and the house. (*Id.*, pp. 129, 141).

3

Dr. Lilley also disputes the findings of Jody Cooper and Terry Ferrell. They both rely on a finding that the most significant damage was in the house's den to conclude that the fire started in the den. Dr. Lilley disagrees with the general idea that it is correct to identify the area of origin of the fire as the area of the most devastation. (*Id*., pp. 140-141). It is often the case that the area of most intense damage in a fire is the place of origin but there are many instances where that is not true. (*Id.*, p. 176). However, in his experience, specific areas in a structure often suffer extensive damage simply because there is a high fuel load in that location. (*Id.*, p. 176). It is thus improper to "jump to the conclusion" that the area of most damage is also the area of origin of the fire. (*Id.*, p. 177). An investigator instead should "[c]onsider how the fire could have got there then caused more damage in that area." (*Id.*, p. 177). He concludes that the damage in the den in this case is explained due to a very high fuel load in that room. (*Id*., pp. 119-120).

Dr. Lilley also inspected the microwave. (*Id.*, p. 44). He relied on Dr. Durham's opinions regarding the microwave being an ignition source. (*Id*., pp. 186-187). He personally agrees that the evidence of shorting inside the microwave is consistent with an ignition source for the fire. (*Id*., pp. 110-111). Also there are vents on the back of the microwave that Dr. Lilley concludes could allow flames to escape from an internal fire in the microwave and spread to the rest of the house. (*Id.*, pp. 111-112).

## ARGUMENTS AND AUTHORITIES

**A.    Mr. Overton And Dr. Lilley Should Be Allowed To Explain Their Investigation And Analysis, Including Their Opinions That The Fire Started Where The Microwave Was Located, That There Is Evidence Of An Electrical Fault Inside The Microwave, And That A Fire Inside The Microwave Would Have Spread.**

G.E. apparently acknowledges that Mr. Overton and Dr. Lilley can testify to "the area of origin and progression of the fire." However, G.E. asks the Court to exclude "any testimony, direct or indirect, regarding the electrical cause of the fire."

That request is overly broad. First, Mr. Overton has sufficient training and experience to identify electrical faults. A good part of basic cause and origin analysis involves identifying

4

electrical causes of fires. Here, any competent investigator can inspect the microwave and determine it had experienced an electrical fault. Even G.E.'s corporate representative, Darrell Williams, agrees that the microwave looks like it experienced a fault. Mr. Williams is in charge of the scoping, development, confirmation, preproduction, pilot and production of new products. (Darrell Williams Depo., Exhibit "4", p. 6). He has a bachelor's degree in chemistry from Tulane University and a doctorate degree in physical chemistry from Louisiana State University. (*Id.*, p. 54). When shown a photo of the area of the microwave that Dr. Durham, Mr. Overton, and Dr. Lilley say experienced the fault, Mr. Williams agreed that the photo could show effects of an electrical fault. (*Id.*, p. 100).

Mr. Overton and Dr. Lilley each have extensive experience analyzing fires, and they are qualified to testify about the existence of an electrical fault. Other courts have recognized that an origin and cause investigator is qualified to identify evidence of electrical arcing. *See, e.g, Citizens Property Ins. Corp. v. Simkar LLC,* 813 F.Supp.2d 1356, 1361 (M.D. Fla.,2011)(rejecting argument that origin and cause expert was not qualified to identify arcing because he was not an electrical engineer); *Harrington v. Sunbeam Products, Inc.,* 2009 WL 701994, * 12 (E.D. Mo. 2009)(allowing origin and cause expert to identify and explain evidence of arcing). Mr. Overton is a fire investigator with training to identify electrical failures. Dr. Lilley is an engineer who has studied fire dynamics. The focus of Mr. Overton and Dr. Lilley's testimony is burn pattern evidence and fire dynamics. However, both experts also examined the microwave, and they both conclude that it experienced and electrical fault. Their opinions do not become irrelevant or inadmissible merely because Dr. Durham is a more qualified witness regarding electrical issues. Also, Mr. Overton and Dr. Lilley do not lack expertise to identify evidence of an electrical fault merely because they defer to Dr. Durham to explain why and how the electrical fault developed.

It is also appropriate to tell the jury about these experts' analyses of the physical evidence to explain how they reached their conclusions in this case. Mr. Overton took certain steps in his investigation analysis: (1) he looked a burn patterns that led to the kitchen and specifically to the area of the microwave; (2) he looked at the microwave itself which appeared to have been exposed to

5

internal and extreme heat; and (3) he looked inside the microwave and saw what appeared to be evidence of electrical arcing. Also, his investigation eliminated all available sources of heat to start the fire in the kitchen. The jury is entitled to hear the process that Mr. Overton followed to reach his conclusions. The fact that Mr. Overton identified an electrical fault during his initial inspection does not become inadmissible merely because Dr. Durham agrees that there was an electrical fault.

**B.     Although Mr. Overton And Dr. Lilley Will Not Provide Testimony Regarding How And Why The Electrical Fault Happened, They Should Be Allowed To Provide Testimony That Relies Upon Dr. Durham's Opinions And Analysis Regarding The Electrical Fault And How It Caused The Fire.**

The expert opinions of Dr. Durham on the one hand and Mr. Overton and Dr. Lilley on the other tend to reinforce each other. In most ways, Mr. Overton and Dr. Lilley's views are related to burn pattern evidence (the results of the fire movement inside the house) and not on the evidence of faulting inside the microwave. (*See, e.g.,* Randel Overton Depo., Exhibit "1", pp. 178-181, 211-230; David Lilley Depo, Exhibit "3", pp. 26-27, 124-125). Both gentlemen independently conclude that: (1) the physical evidence is consistent with the fire starting in the kitchen; and (2) the physical evidence is inconsistent with the fire starting in the house's den/living room. They reach those conclusions primarily based upon fire pattern evidence that is independent of Dr. Durham's conclusions. (*Id.*).

Nevertheless, Dr. Durham's opinions reinforce Mr. Overton and Dr. Lilley's interpretation of the fire-pattern evidence. The high-resistance fault inside of the microwave that Dr. Durham found explains what caused the fire to start in the area of origin that was originally identified by Mr. Overton. Dr. Durham's opinions about the electrical failure in the microwave also tends to reinforce Mr. Overton's and Dr. Lilley's opinions that the fire started in the kitchen and spread to the living room. If Dr. Durham is correct that there was a high-resistance fault in the microwave, then the fire started in the kitchen. For reasons explained by both Dr. Durham and Mr. Overton, external heat would not cause the evidence of arcing they see inside the microwave. Moreover, if the fire encroached on the microwave it would have cut off the flow of electricity to it before the wiring

inside the microwave burned. The *only* explanation for the melted copper inside the microwave is that it is the origin of the fatal fire.

Even Hunter Sims, the alleged expert hired by G.E., agrees that if Dr. Durham is correct that an electrical fault in the microwave caused the fire – that evidence, standing alone, eliminates appliances in the living room as potential ignition sources. (Sims Depo., Exhibit "5", p. 122). Mr. Overton and Dr. Lilley reasonably reach the same conclusion.

The Plaintiff will not ask questions of Mr. Overton or Dr. Lilley that invite them to explain the product defect or the process that led to the high-resistance fault. However, both Mr. Overton and Dr. Lilley should be allowed to reference Dr. Durham's opinions and rely on Dr. Durham's opinion that there was an internal electrical fault as part of their analysis of how the fire spread through the house. Experts in fire cases routinely rely upon the observations of other experts in reaching their conclusions. The Advisory Committee Note to Fed.R.Evid. 702 directs that the "facts and data" that an expert may consider is broad enough to include "reliable opinions of other experts, hypothetical facts supported by the evidence, and facts that may be otherwise admissible." It is particularly common for experts to rely upon each other in cases involving issues relating to the cause of a fire. This reality was recognized by the court in *Argonaut Ins. Co. v. Samsung Heavy Industries Co. Ltd.*, 929 F.Supp.2d 159, 168 (N.D. N.Y., 2013). The *Argonaut* court rejected a challenge to an electrical engineer's testimony that asserted the expert's opinions relied upon opinions of an origin and cause expert. The *Argonaut* court recognized that an electrical engineer is entitled to rely upon an origin and cause expert's findings with respect to cause and origin. *Id.* The *Argonaut* court further agreed that experts "in fire cases often rely upon the observations of other experts in reaching their conclusions." *Id.* (quoting *Peerless Ins. Co. v. Marley Engineered Products LLC*, 2008 WL 7440158, *6 (E.D. N.Y. 2008).

Dr. Durham may rely on Mr. Overton's opinion. In the same manner, Mr. Overton and Dr. Lilley reasonably may rely on Dr. Durham. G.E. has provided no explanation for why this common practice is improper or results in unreliable testimony in this case.

7

**CONCLUSION**

The Plaintiff will not call either Mr. Overton nor Dr. Lilley to analyze the specific electrical cause of the fire, so he does not object to the Motion in Limine to the extent that Plaintiff wishes to eliminate that evidence. However, any order granting the Motion in Limine should recognize that it is appropriate for the Mr. Overton and Dr. Lilley to provide opinions:

1. That the physical evidence regarding the spread of the fire is consistent with the fire originating where the subject microwave was located;

2. That the microwave itself exhibits burn pattern and physical evidence indicating that it experienced electrical arcing and an internal fire; and

3. That rely in part upon Dr. Durham's opinions regarding the electrical cause of the fire.

Respectfully submitted,

TAYLOR, RYAN, MINTON, VAN DALSEM,
 & WILLIAMS, P.C.


By  s/Robert Scott Williams
    ROBERT TAYLOR - OBA #8879
    NEIL D. VAN DALSEM - OBA #16326
    ROBERT SCOTT WILLIAMS - OBA #19974
    Suite 850 Boulder Towers
    1437 S. Boulder Ave.
    Tulsa, OK  74119-3640
    (918) 749-5566

**CERTIFICATE OF MAILING**

   I, ROBERT SCOTT WILLIAMS, hereby certify that on the __23rd__ day of April, 2014, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John H. Tucker
Randall E. Long
Kerry R. Lewis
100 West 5th Street
Suite 400
Tulsa, OK 74103
Attorneys for General Electric
and Daewoo Electronics

               s/Robert Scott Williams
               ROBERT SCOTT WILLIAMS