IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN J. EVANS, as Personal Representative of the Estate of Dorothy Lorene Evans, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY and DAEWOO ELECTRONICS AMERICA, INC., and BEST BUY STORES, L.P. and BBC PROPERTY CO.<br><br>Defendants. | Case No. 11-CV-802-JED-FHM |

**PLAINTIFF'S RESPONSE TO DEFENDANT GENERAL ELECTRIC COMPANY'S *DAUBERT* MOTION TO EXCLUDE WILLIAM YARBOROUGH, MD**

Plaintiff, John J. Evans, as Personal Representative of the Estate of Dorothy Lorene Evans, respectfully submits the following Response to Defendant General Electric Company's *Daubert* Motion to Exclude William Yarborough, MD. As is discussed below, Dr. Yarborough, a highly qualified medical expert, has offered opinions based upon sound medical science. The alleged inadequacies in Dr. Yarborough's opinions go to the weight, not the admissibility of his testimony. The Defendant's Motion to exclude Dr. Yarborough should be denied.

## INTRODUCTION

On December 17, 2010, a fire destroyed Dorothy Evans's house. Ms. Evans was 94 years old and blind. She burned to death. The Plaintiff maintains that Ms. Evans died as a result of direct burns, and that she consciously suffered the pain associated with those injuries.

The Plaintiff will offer the testimony of William Yarborough, MD in support of that claim. Dr. Yarborough has been a practicing physician since 1977. He is currently the Executive Vice

Chair of the Department of Internal Medicine and a Professor of Medicine at the University of Oklahoma Medical School.

Dr. Yarborough concludes that, to a reasonable degree of medical certainty, Ms. Evans died as a result of direct thermal injuries, as opposed to smoke inhalation. Put simply, he concludes that she probably died from burning to death. Dr. Yarborough's opinion is based upon the following:

    a.    Ms. Evans's HBCO (blood carboxyhemoglobin) level was 18 percent, which is generally not fatal.

    b.    Ms. Evans's body was in a fetal position, which indicates that she was trying to protect herself from fire.

    c.    Although Ms. Evans had evidence of soot inhalation, the levels recorded indicate that this was not the likely cause of her death.

(William Yarborough, M.D. Report, Ex. "1").

Dr. Yarborough's opinions are based upon his education, training and experience as a physician. They are based upon sound medical science, not the type of "junk science" that is intended to be excluded under *Daubert*. The fact that Dr. Yarborough was not aware of Ms. Evans's entire medical history and all of her medical conditions prior to his report and deposition may be a subject of cross-examination, but it does not affect the admissibility of his opinions. Moreover, even after considering information about her medical conditions, Dr. Yarborough concludes that the most likely cause of Ms. Evans's death was direct thermal injury. (Deposition of William Yarborough, M.D., Ex. "2", pp. 74-75). The Defendant's Motion to exclude Dr. Yarborough's testimony should be denied.

**ARGUMENTS AND AUTHORITIES**

**A.    The Court's Role Is To Exclude Opinions That Constitute Junk Science, Not To Weigh The Evidence Or Usurp The Jury's Role As Fact-Finder.**

Both parties have now submitted briefs that set forth the "Black Letter" law regarding *Daubert* and its progeny. Both parties are trying to exclude testimony of their adversaries' experts. As might be expected, the *Daubert* briefs filed thus far emphasize the aspects of *Daubert* that promote the *exclusion* of expert testimony.

In reality, *Daubert* is not an invitation for this Court to decide the merits of this case under the guise of excluding expert testimony. The function of a *Daubert* hearing is not to replace a trial on the merits. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  This Court should admit expert testimony "if there are 'good grounds' for the expert's conclusion" notwithstanding a judge's personal belief that there are better grounds for some alternative conclusion. *Heller v. Shaw*, 167 F.3d 146, 152–53 (3d Cir. 1999) (citations omitted).

As will be explained, Dr. Yarborough's opinions have a reliable basis in science and his vast experience,  and should be admitted at trial.

**B.    Dr. Yarborough Is A Highly Qualified Expert.**

Rule 702 requires that a witness have "expert[ise] resulting from knowledge, skill, experience, training, or education." The Defendant concedes, as it must, that Dr. Yarborough is qualified as to testify as an expert witness in this case.  The Defendant instead argues that his opinions *in this particular case* are unreliable.

However, in evaluating the reliability issue, this Court should recognize that Dr. Yarborough is a highly qualified medical expert. As is shown by Dr. Yarborough's Curriculum Vitae, which is attached as Exhibit "3", Dr. Yarborough has extensive medical training and experience and has been a Professor of Medicine for decades. During that time, he has cared for many patients who had smoke inhalation injuries and severe, including fatal, burns. He has been the Director or Chair of numerous committees and departments. He has had several publications and speaking engagements and has conducted several studies and research projects.

It is proper for this Court to consider Dr. Yarborough's qualifications when evaluating the particular opinion or testimony proffered in this case. *United States v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983). Witnesses qualifications, standing alone, do not establish reliability under Daubert. However, the Advisory Committee Note on Rule 702 also provides this guidance:

> Nothing in this amendment is intended to suggest that experience alone or experience in conjunction with other knowledge, skill, training, or education may not provide sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.
> . . . .

Moreover, in some fields, experience alone is the "predominant, if not sole, basis for a great deal of reliable expert testimony." Id.

Dr. Yarborough's experience and medical knowledge, standing alone, provide a reliable basis for his opinions.

**C.    Dr. Yarborough's Opinions Are Based Upon Sound Medical Science.**

A *Daubert* challenge is supposed to address whether an expert opinion has a reliable basis, as opposed to constituting "junk science." Dr. Yarborough's opinions have a reliable basis. Dr. Yarborough's opinions are based, in part, on test results showing that Ms. Evans's HBCO

(hemoglobin carbon monoxide) level was only 18%, which is not considered fatal. According to Dr. Yarborough's report, most fatal cases or carbon monoxide poisoning involve levels of "at least 30%, usually higher." (Report, Ex. "1"). The Defendant complains that Dr. Yarborough's report fails to explain what an HBCO level is and the factors that could affect a person's HBCO level. However, Dr. Yarborough explained during his deposition what an HBCO level is and what it measures. (William Yarborough, M.D. depo., pp. 61-62, 68). The Defendant also ignores the fact that everyone involved in this litigation understands what an HBCO level is and that it is the approved and accepted method for determining a person's level of carbon monoxide exposure.

Dr. Yarborough also relies upon evidence of the degree of soot inhalation to determine that Ms. Evans's levels were not sufficient to conclude that smoke inhalation probably killed her.

The Defendant cannot reasonably contend that Dr. Yarborough's reliance upon evidence of HBCO and soot inhalation levels is not an accepted method of determining the cause of death of a fire victim. All of the medical experts in this case, including Dr. Yarborough, the Medical Examiner, and the Defendant's own medical expert, Steven Pike, M.D., relied upon this evidence to render their opinions in this case.

Finally, Dr. Yarborough opines that Ms. Evans was directly exposed to flames because her body was found in a fetal position. Although the Defendant may cross-examine Dr. Yarborough regarding the possibility that Ms. Evans's fetal position was due to contractures after death, this is not a basis to exclude his testimony. Contrary to the Defendant's implications, Dr. Yarborough did not admit that Ms. Evans's fetal position was caused by post-mortem contractures. He only admitted that she "might have in death had some contractures."

Apparently recognizing that Dr. Yarborough's opinions are medically sound, the Defendant

5

resorts to attacking Dr. Yarborough's opinions with evidence that may be proper for cross-examination, but is not a basis to conclude that Dr. Yarborough's opinions are "junk science." Specifically, the Defendant complains that Dr. Yarborough had insufficient information about Ms. Evans and her medical conditions prior to rendering his opinions.

Dr. Yarborough's opinions were based upon the Medical Examiner's report, lab results and photographs of Ms. Evans's body. He was aware that Ms. Evans was 94 years old, a smoker, and had cancer. Moreover, prior to his deposition, he was aware that Ms. Evans had pneumonia and renal failure. He did not know that she had atrial fibrillation, pulmonary hypertension or COPD. However, after this information was provided to Dr. Yarborough at this deposition, he continued to conclude that Ms. Evans probably died as a result of direct thermal injury. (Id., pp. 74-75). The Defendant should be allowed to cross-examine Dr. Yarborough regarding the effect of Ms. Evans's medical conditions on the cause of her death, but the Court should not exclude his opinions on that basis.

The Defendant also attempts to attack Dr. Yarborough's opinions with statements by their own expert, Dr. Pike, which are based upon pure speculation. For example, Dr. Pike concludes that, if Ms. Evans had been conscious long enough to suffer pain from direct burns, she would have been conscious long enough to escape the house. Dr. Pike cannot speculate what Ms. Evans, a 94-year-old blind person, could or would have been able to do under those circumstances.

Defendant's reliance upon *Mitchell v. Gencorp, Inc.*, 165 F.3d 778 (10th Cir. 1999) is misplaced. The *Mitchell* case involved a toxic tort claim. In a toxic tort case, the plaintiff must prove exposure to a harmful substance, the level at which exposure to the substance is hazardous to humans, and the plaintiff's actual level of exposure. *Id.* at 781. The plaintiff's medical experts

reviewed literature which supported a link between benzene exposure and certain types of leukemia. *Id.* at 782. However, the experts did not have any evidence that the plaintiff was actually exposed to benzene and the literature did not support a link between benzene exposure and the type of leukemia suffered by the plaintiff. *Id.* The Court upheld the trial court's decision to exclude the experts' testimony. The *Mitchell* case has no relevance to the issue before this Court.

Defendant's reliance on *Canal Ins. Co. v. Montello, Inc.*, 2012 WL 4891699 (N.D. Okla. 2012) is also misplaced. The *Canal* case involved a declaratory judgment action regarding whether coverage was available under an insurance policy. The insurer hired an expert to attempt to reconstruct the terms of the policy, which was missing. The expert only reviewed two exemplar policies out of unknown number of possible policy forms. *Id*. at *8. Neither of those exemplar policies were issued in Oklahoma, like the policy in question. *Id*. The expert admitted that certain key policy provisions may or may not have been in the missing policy. *Id*. at *9. In deciding to exclude his testimony, the Court expressed concern over the insufficient amount of work performed by the expert. *Id*. The *Canal* case had nothing to do with a medical expert's reliance on approved methods for determining the cause of death of a house fire victim.

**D.     Dr. Yarborough Is Not Required To Absolutely Rule Out All Possible Causes Of Ms. Evans's Death.**

Oklahoma law places the burden on a plaintiff to produce evidence from which a jury can infer that his or her claim is probably valid. In the context of a personal injury, wrongful death or products liability case, a plaintiff is required to introduce evidence regarding causation of injuries. O.U.J.I.3d Nos. 9.1, 9.6, 12.1, 12.4. In cases where the cause of an injury is in dispute and not obvious to a layperson, the plaintiff must introduce expert testimony establishing that the injury was

7

probably caused by the defendant. *Boxberger v. Martin*, 1976 OK 78, 552 P.2d 370, 373.

Dr. Yarborough opines that, to a reasonable degree of medical certainty, Ms. Evans died as a result of direct burns. The Defendant contends this opinion is inadmissible based upon several alleged admissions made by Dr. Yarborough. For example, the Defendant claims that Dr. Yarborough admitted at his deposition that a person in a smoke-filled environment would suffocate and lose consciousness. (Defendant's Brief, pp. 10-11). However, a review of Dr. Yarborough's testimony, at pages 66 through 69 of his deposition, shows that Dr. Yarborough did not admit that Ms. Evans lost consciousness and died as result of suffocation. Instead, Dr. Yarborough simply acknowledged that it is possible for a person in a smoke-filled environment to die of suffocation, and that Ms. Evans was more susceptible to suffocation than an average person.

The Defendant also claims that Dr. Yarborough admitted that he does not have "any" evidence that Ms. Evans was still living when the fire reached her. (Defendant's Brief, p. 12). Again, Dr. Yarborough made no such admission. Instead, at page 75 of his deposition, he testified that he could not "absolutely say" that she was living when the fire reached her. Defendant cites no authority for the view that an expert's opinion must be to a 100% certainty to be admissible.

Similarly, the Defendant claims that Dr. Yarborough admitted that it was "equally possible" that Ms. Evans died of suffocation. (Defendant's Brief, p. 12). Dr. Yarborough agreed that it was "certainly possible" that Ms. Evans died as a result of suffocation, but he maintained his opinion that, to a reasonable degree of medical certainty, direct burns caused Ms. Evans's death. He also maintained that the soot inhalation levels did not indicate that soot inhalation was the cause of death.

Contrary to the Defendant's argument, the fact that Dr. Yarborough did not unequivocally rule out other possible causes of Ms. Evans's death does not render his opinions inadmissible

(although it does suggest he is being candid and honest).

The Defendant's reliance on cases involving a "differential diagnosis" analysis is misplaced. For example, in *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2005), an expert testified that he used the method of "differential diagnosis" to reach a conclusion regarding the cause of a gas explosion. The Court explained that the concept of "differential diagnosis" is typically used in a medical context, and is *one* valid scientific technique to establish causation of injuries. *Id.* at 1236. A differential diagnosis is "the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings." *Id.* The Court determined that the expert was really using a process of "reasoning to the best inference," by reasoning "backwards to the cause of a single explosion." *Id.* This process requires "eliminating possible causes as improbable until the most likely one is identified." *Id*. Moreover, the *Biting* Court recognized that experts employing a differential diagnosis analysis are not required to "categorically exclude each and every possible alternative cause." *Id.* at fn. 6. Otherwise, "few experts would ever be able to testify." *Id.*

As recognized in *Bitler*, the use of a differential diagnosis analysis is only one method an expert may use to determine causation of injuries. Dr. Yarborough was not required to and did not use a "differential diagnosis" analysis. He concluded, based upon scientifically-accepted methods, that Ms. Evans died of direct burns, not carbon monoxide poisoning or soot inhalation. Regardless of the method he used to reach his conclusions, he is not required by any method to exclude all possible alternative causes.

The holdings in *Smith v. Sears Roebuck and Co.*, 232 Fed.App. 780 (10th Cir. 2007) and *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499 (9th Cir. 1994) are also inapposite. In *Smith*,

the Court excluded expert testimony regarding an alleged defective garage door opener. The expert offered an opinion regarding why the garage door failed, but he had not conducted any testing, ignored important evidence, and failed to address numerous holes in his theory. Id. at 783. In *Claar*, a toxic tort case, the court excluded the testimony of experts whose opinions were devoid of any explanation regarding the reasoning and methods underlying their conclusions, despite several court orders to provide that information. *Id*. at 502. The experts also made no effort to consider other potential causes of the plaintiff's learning difficulties, which is particularly important in a toxic tort case involving disputed causation issues. *Id*.

Unlike the expert opinions in *Smith* and *Claar*, Dr. Yarborough's opinions have a sound basis in science and accepted methodology. In addition to the other reasons discussed above, Dr. Yarborough concludes that it is probable that Ms. Evans died from fire, not smoke, because the carbon monoxide levels in her blood were not near a fatal level. The jury is entitled to hear this evidence, which will help it to understand how Mr. Evans probably died.

## **CONCLUSION**

There are no grounds to exclude Dr. Yarborough's testimony under *Daubert*. He is extremely well-qualified as an expert. His opinions, which are based upon autopsy results and evidence regarding the condition of Ms. Evans's body, have a reliable basis. The Court should deny the Defendant's *Daubert* challenge regarding Dr. Yarborough's testimony.

Respectfully submitted,

TAYLOR, RYAN, MINTON, VAN DALSEM & WILLIAMS, P.C.


By  s/  ROBERT  SCOTT  WILLIAMS
   ROBERT SCOTT WILLIAMS-OBA #19974
   850 Boulder Towers
   1437 South Boulder Avenue
   Tulsa, Oklahoma 74119-3640
   (918) 749.5566 Telephone
   (918) 749.9531 Facsimile


## CERTIFICATE OF SERVICE

I, ROBERT SCOTT WILLIAMS, hereby certify that on the 23rd day of April, 2014, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

John H. Tucker
Randall E. Long
Kerry R. Lewis
100 W. 5th St.
Suite 400
Tulsa, OK 74103
*Attorneys for General Electric*
*and Daewoo Electronics*


                             s/ROBERT SCOTT WILLIAMS
                             ROBERT SCOTT WILLIAMS