IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN J. EVANS, as Personal Representative of the Estate of Dorothy Lorene Evans, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY, DAEWOO ELECTRONICS AMERICA, INC., BEST BUY STORES, LP, and BCC PROPERTY CO.,<br><br>    Defendants. | Case No.: 4:11-cv-00802-JED-FHM |

**DEFENDANT GENERAL ELECTRIC COMPANY'S
RESPONSE TO PLAINTIFF'S MOTION IN LIMINE REGARDING JOE COOPER**

Defendant, General Electric Company ("GE"), submits the following Response to Plaintiff's Motion in Limine regarding Joe Cooper. [Dkt. 122.]

### INTRODUCTION

Plaintiff maintains that the jury should not be allowed to hear testimony from GE's origin and cause expert, Joe (or Jody) Cooper, because Plaintiff and his experts disagree with Cooper's opinions. [Dkt. 122.] Plaintiff argues that Cooper's opinions and testimony are suspect because Cooper: (1) identified a number of potential sources of ignition, (2) classified the cause of the fire as "undetermined," and (3) allegedly violated NFPA 921, § 18.6.5.[1] Plaintiff misunderstands how the *Daubert* standards work. *See Daubert v. Merrell*

---

[1] Plaintiff's Motion mentions other disagreements with GE's defense in this case, such as GE's experts' testimony about the cause of the alleged faulting on the TCO wire, *i.e.*, what Plaintiff calls the "Magic Dent" theory. Plaintiff's Motion does not explain how these disagreements apply to Cooper's testimony and opinions. GE incorporates arguments from its Response to Plaintiff's Motion in Limine regarding Hunter Sims (Dkt. 121), to the extent such arguments are deemed to apply to Cooper.

*Dow Pharms, Inc.*, 509 U.S. 579 (1993). *Daubert* does not focus on the conclusions of an expert but evaluates whether the expert properly followed the methodology applicable to the expert's field. Cooper, as an expert for GE, is not required to identify a source of the fire. Indeed, NFPA 921[2] requires an expert to classify the cause of a fire as "undetermined" when, as here, potential sources of ignition could not be eliminated. Finally, Plaintiff misapplies § 18.6.5, commonly referred to as the negative corpus rule, to Cooper's testimony even though Cooper did not identify a specific cause of the fire.[3] Plaintiff's Motion should be denied in its entirety.

## BACKGROUND FACTS AND PLAINTIFF'S THEORY

Dorothy Evans, aged ninety-four, died during a fire in the den of her home on December 17, 2010. Mrs. Evans had a habit of smoking cigarettes while sitting in a chair in the den. [Exh. 1 - J. Evans depo. at 37:16 - 38:8.] Plaintiff told Terry Ferrel, the State Fire Marshal, that the family previously found burn marks on her clothes, the furniture and the floor. [Exh. 2 - Ferrel depo. at 13:4 - 14:5.] After the fire, Mrs. Evans was found in the den next to a sofa and near to her chair. [*Id.* at 33:11-15.]

Plaintiff alleges the fire was started by a GE-branded microwave oven ("MWO") that was located on a kitchen countertop. Plaintiff's theory is that a fault or arcing event took place in a wire leading to the thermal cut-off ("TCO wire") in the MWO. [*See* Exh. 3 - Durham Rule 26 Report at 9.] According to Plaintiff, the alleged fault is situated where the TCO wire ran over a metal ridge on the top of the inside oven compartment. [*Id.*] The electrical arc then supposedly ignited the flame-retardant insulation on the other internal

---

[2] National Fire Prevention Association's Guide for Fire and Explosion Investigations 921.
[3] NFPA 921's negative corpus rule states that it is not scientifically valid to conclude that a potential source of ignition was the cause of a fire solely by eliminating all other potential ignition sources. *See* NFPA 921, § 18.6.5.

2

wires and the plastics in the MWO. [Exh. 4 - Durham depo. at 184:11-16.] Plaintiff believes the fire then escaped from the MWO to the wooden kitchen cabinets on the wall several inches above the MWO, and from there, the fire spread to the ceiling and went toward the den. [Exh. 5 - Overton depo. at 51:16-24.]

Plaintiff's sole claim is that GE should be liable under a products liability claim based on an alleged manufacturing defect unique to the subject MWO. [*See* Dkt. 142 - Joint Statement of Case; Exh. 4, at 158:1-10 (the defect in subject MWO was "obviously" "uncommon").] Although not entirely clear, Plaintiff alleges the subject MWO must have been manufactured incorrectly because the alleged fault could only have occurred when (1) the insulation on the TCO wire "deteriorated" where it crossed the ridge and (2) the insulative powder coating on the ridge was not present at that same point. [Exh. 4, at 172:22 - 173:9; 208:23 - 209:3.]

GE denies there was any manufacturing defect(s) in the subject MWO, much less that it started the fire in Mrs. Evans' home. As discussed below, all the physical evidence is consistent with the fire starting in the den area which could have been caused by several different ignition sources, electrical and cigarette based, that cannot be adequately ruled out.

### JOE COOPER'S OPINIONS AND TESTIMONY

For more than 35 years, Cooper has investigated the cause and origin of numerous fires for law enforcement agencies, fire departments, insurers and attorneys. [*See* Exh. 6 - Cooper CV.] Cooper is an Internationally Certified Fire Investigator, National Certified Fire Investigator and a Nationally Certified Fire Inspector Levels I and II. [*Id; see also* Exh. 7 - Cooper depo. at 6:17-23.] He also instructs students in various areas, including fire

3

investigation.  [*See* Exh. 6.]

Cooper was retained to perform an origin and cause investigation of the fire at the Evans' home shortly after the fire.  [Exh. 8 - Cooper Rule 26 Report at 2; Exh. 7 at 9:10-12.]  Cooper inspected and photographed the home, the fire debris and spoke with representatives of the fire department, the Fire Marshal, and a representative of the family of Mrs. Evans.  [Exh. 8, at 2-3; Exh. 7, at 9:18-20; 14:13 - 16:23; 19:9 - 20:20.]  Cooper also attended laboratory inspections of the fire remnants and artifacts from the fire scene.  [Exh. 8, at 2-3; Exh. 7, at 92:13-18.]

In contrast to Plaintiff's theory, Cooper found that the cause of the fire, according to NFPA 921's classification system, should be labeled "undetermined."  [Exh. 8, at 3; Exh. 7, at 21:4-20.]  Based on his extensive investigation, Cooper opines that there were a number of other potential sources of ignition that could not be ruled out, including but not limited to Mrs. Evans' habit of smoking in the den and a power strip located in the den.  [Exh. 8, at 2; Exh. 7, at 91:23 - 92:6; 129:20 - 130:7.]  Cooper also found that the fire likely started at the west end of the den, where an older power strip was used for the TV, VCR and a light.  [Exh. 8, at 2, 14-17; Exh. 7, at 20:14 - 21:14.]  Based on burn patterns, physical evidence and the statements of the first responders, Cooper rejected the idea that the fire originated in the kitchen.  Cooper also analyzed and critiqued the analysis and methodology used by Plaintiff's experts in detail.  [Exh. 8, at 22-31.]  In general terms, Cooper determined that Plaintiff's experts formulated their opinions based on faulty assumptions and incomplete information.  [*Id; see also* Exh. 7, at 120:20 - 121:24.]  The reliability of the opinions of each of Plaintiff's experts also suffered from their collective failure to follow crucial steps required by NFPA 921.  [Exh. 8, at 22-31; Exh. 7, at 120:20 - 121-24.]

4

## ARGUMENT AND AUTHORITIES

**I.   THIS COURT SHOULD STRIKE PLAINTIFF'S SUPPLEMENTAL RULE 26 REPORT AND THE ACCOMPANYING ARGUMENTS BECAUSE IT VIOLATES THIS COURT'S ORDER DENYING PLAINTIFF'S REQUEST TO SERVE EXPERT REBUTTAL REPORTS.**

As with Plaintiff's Motion in Limine regarding Hunter Sims, Plaintiff attaches and relies on his expert's previously undisclosed supplemental Rule 26 Report to his Motion in violation of this Court's prior Order. [*See* Dkt. 122-3.] Plaintiff's blatant violation of this Court's Order compels the supplemental expert report, and the argument accompanying it, to be stricken from Plaintiff's Motion.

On January 13, 2014, long after the parties had exchanged Rule 26 expert reports, Plaintiff asked this Court for leave to file supplemental rebuttal expert reports. [*See* Plaintiff's Motion for Leave to Offer Rebuttal Expert Opinion (Dkt. 110).] On January 23, 2014, this Court *sua sponte* denied Plaintiff's request for leave. [*See* Order (Dkt. 113).] In a transparent bid to go around that Order, Plaintiff attached a supplemental expert rebuttal report prepared by his expert, Marcus Durham, to his Motions *in Limine* regarding Hunter Sims and Joe Cooper. [*See* Ex. 4 to Plaintiff's Motion in Limine Regarding Testimony of Hunter Sims (Dkt. 121-4) and Ex. 3 to Plaintiff's Motion in Limine Regarding Testimony of Joe Cooper (Dkt. 122-3).] Durham's supplemental expert rebuttal report, dated November 19, 2013, purports to criticize the methods used by Sims and Cooper in their preparation of their opinions in this case. [*Id.*]

The supplemental rebuttal expert report and the accompanying argument should not be considered as part of Plaintiff's Motions. Plaintiff's violation of this Court's Order justifies the sanction of striking the supplemental report and arguments:

It is beyond question that obedience to judicial orders is an important public

5

>policy.  *W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983).  An order issued by a court acting within its jurisdiction must be obeyed until vacated or withdrawn.  Violations of court orders may lead to civil or criminal sanctions, see *United States v. Burleson*, 638 F.2d 237, [241] (10th Cir. 1981), or  attorney sanctions.

*Whitehead v. Allied-Signal*, 1998 U.S. Dist. LEXIS 20377, at *2 (W.D. Okla., July 22, 1998).  In a similar situation, Judge Cauthorn in the Western District of Oklahoma initially denied a party's request to designate a rebuttal expert and submit a rebuttal expert report.  Like here, the party then tried to go around that order by providing the same information and opinions in a supplemental expert report.  Judge Cauthorn granted the opposing party's motion to strike the report. *See Board of County Commissioners of County of Katy, Oklahoma v. Freeport-McMoran Copper & Gold, Inc.*, 2013 U.S. Dist. Court LEXIS 185759 at *1 (W.D. Okla. Sept. 13, 2013).  "The expert disclosure requirements of Rule 26 are clear and a 'litigant who fails to comply with these requirements does so at his own peril.'" *Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 429 (N.D. Okla. 2008).

Plaintiff should not be allowed to violate and bypass this Court's prior Order that declined to grant him leave to submit a rebuttal expert report by including such a report as an Exhibit to its Motion in Limine.  The supplemental expert report of Marcus Durham and any arguments related to it should be stricken from Plaintiff's Motion and not considered.

**II.     PLAINTIFF'S DISAGREEMENT WITH COOPER'S OPINIONS AND CONCLUSIONS DOES NOT SUPPORT A *DAUBERT* CHALLENGE.**

Plaintiff in essence argues that Cooper's testimony should be excluded because he disagrees with Cooper's conclusions and opinions – not his methodology.  As with the Motion in Limine regarding Hunter Sims, Plaintiff misunderstands the purpose and requirements of *Daubert* and Rule 702.  "[A] trial court's focus generally should not be upon

6

the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004) (citing *Daubert*, 509 U.S. at 595). "Even though the court may delve deeply into the minutiae of the proposed expert's opinions while conducting the *Daubert* analysis, the court must always remain mindful that its focus '***must be solely on principals and methodology, not on the conclusions they generate***,' . . . except that a *Daubert* challenge may succeed if the court 'conclude[s] that there is simply too great an analytical gap between the data and the opinion proffered.'" *In re Williams' Sec. Litig.*, 496 F. Supp. 1195, 1230 (N.D. Okla. July 6, 2007) (citing *Daubert*, supra, 509 U.S. at 595 and *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)) (emphasis added).

Plaintiff solely disagrees with Cooper's opinions in this case. Mere disagreements are not appropriate bases for excluding expert testimony under *Daubert*. Plaintiff must point to, and prove, that Cooper formulated his conclusions and opinions using flawed or unaccepted methodology.

### III. PLAINTIFF'S MISUNDERSTANDS COOPER'S AND GE'S ROLE IN THIS LAWSUIT.

Plaintiff's argument is premised on a misunderstanding of Cooper's role in this lawsuit. Plaintiff contends that Cooper's testimony should be excluded because Cooper did not definitively conclude which of the other potential ignition sources that GE identified actually caused the fire in Mrs. Evans' home. [Dkt. 122, at 6.] As noted in the Response to the Motion in Limine regarding Hunter Sims, Plaintiff misunderstands the role of GE and Cooper. It is Plaintiff – not GE or its experts – who must prove that the allegedly defective subject MWO was the source and the cause of the fire. *See Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1364 (Okla. 1974); *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 190 (Okla.

7

1992). GE and Cooper are not required to establish the definitive alternate source of the fire to defeat Plaintiff's claims. *Kirkland*, supra at 1364; *Dutsch*, supra at 190; *Fidelity-Phenix Fire Ins. Co. of New York v. Flata Mercante Del Estatado*, 102 F. Supp. 861, 865 (E.D. La. 1952) (plaintiff's complaint that the fire cause was "undetermined" by defendant did not matter because plaintiff bore the burden of proof). As part of its defense, GE is entitled to criticize Plaintiff's experts' theory of the cause of the fire and point to alternative potential sources of the fire that Plaintiff's experts did not properly eliminate, all of which Cooper did. Furthermore, consistent with NFPA 921, Cooper concluded the cause of the fire was "undetermined."

### IV. PLAINTIFF ALSO MISAPPLIES THE NEGATIVE CORPUS RULE OF NFPA 921, § 18.6.5 TO COOPER'S OPINIONS AND TESTIMONY.

Plaintiff's only criticism of Cooper's methodology is based on § 18.6.5 of NFPA 921, the negative corpus rule  NFPA 921's negative corpus rule states that it is not scientifically valid to conclude that a potential source of ignition was the cause of a fire solely by eliminating all other potential ignition sources. *See* NFPA 921, § 18.6.5. Although Plaintiff, on one hand, complains that Cooper classified the cause of the fire as "undetermined," he ironically also contends that Cooper violated § 18.6.5 by opining "as to a specific cause [of the fire]." [Dkt. 122, at 6.] Plaintiff misstates Cooper's testimony and opinions and compounds that error by applying § 18.6.5 to Cooper's testimony.

Cooper does not opine that any specific source was the cause of the fire. [Exh. 8, at 2.] As Plaintiff himself notes, Cooper will testify consistent with his Rule 26 Expert Report, that this fire should be classified as "undetermined." [*Id.*] Cooper points to other potential ignition sources that could not be eliminated as the cause of the fire and leaves the analysis regarding of the TCO wire to GE's electrical engineering expert. [*Id*. at 3 & 27-29.]

Cooper's opinions are consistent with the requirements of NFPA 921.[4]  NFPA 921 unambiguously recognizes that the cause of a fire may be "undetermined" if all potential sources of ignition are eliminated, see § 18.6.5, or if some of the potential sources cannot be eliminated.  NFPA 921, § 18.7.4.  "If the level of certainty of the opinion is only 'possible' or 'suspected,' the fire cause is unresolved and **should be** classified as 'undetermined.'"  *Id*. (emphasis added).

The negative corpus rule of NFPA 921, § 18.6.5, does not apply to Cooper's opinions and testimony.  The negative corpus rule states that it is impermissible for a fire investigator to conclude that a specific source was the cause of the fire after the investigator eliminates all potential sources of ignition without having any proof of any ignition source.  Because Cooper concluded that the cause of the fire was 'undetermined,' the negative corpus rule does not apply to his opinions or testimony.

Likewise, the case cited by Plaintiff, *State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp.2d 434 (E.D. Pa. 2013), does not apply here.  In *Steffen*, the defendants sought to exclude the testimony of the plaintiff's origin and cause expert because the expert failed to follow NFPA 921.  Unlike here, the plaintiff's expert in *Steffen* speculated that the fire could have been caused by smoking based only on "the status of" one of the defendants "as a smoker, nothing more."  *Id*. at 442-43.  The plaintiff's expert assumes the defendant dropped the cigarette into a trash can and further assumes that combustible materials in the trash can – "of which there is no direct or circumstantial evidence" – were ignited.  *Id*. at 443.  The cause and origin expert also eliminated all electrical causes for the fire based only on a handwritten statement by an electrical engineer that said "it was unlikely" that an

---

[4] The Sections of NFPA 921 cited in this Response are attached as Exhibit 9.

9

electrical problem caused the fire. *Id*. at 440 & 444.  The electrical engineer later testified that the electrical wires were too badly burned for him to make a final determination. *Id*. at 444.  Because plaintiff's origin and cause expert relied on speculation and failed to analyze all of the facts and data, the court excluded his testimony.  And, because the plaintiff could not meet its burden of proof on causation, summary judgment was granted in the defendants' favor.

In contrast to the expert in *Steffan*, Cooper does not rely on speculation regarding Mrs. Evans' habit of smoking in the den and Plaintiff does not cite to any relevant facts or data that Cooper ignored.  Cooper will rebut the anticipated testimony of Plaintiff's experts that all other potential causes of the fire were properly eliminated under NFPA 921.  Cooper's testimony is based on reliable methodology and falls well within his role as GE's origin and cause expert.  Therefore, Plaintiff's Motion should be denied.  [Dkt. 122.]

WHEREFORE Defendant General Electric Company asks this Court to deny Plaintiff's Motion in Limine regarding Joe Cooper.  [Dkt. 122.]

Dated: April 23, 2014.

Respectfully submitted,

By   /s/ John H. Tucker
JOHN H. TUCKER, OBA#9110
jtucker@rhodesokla.com
KERRY R. LEWIS, OBA #16519
klewis@rhodesokla.com
RANDALL E. LONG, OBA #22216
rlong@rhodesokla.com
RHODES HIERONYMUS JONES TUCKER & GABLE
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
(918) 582-1173
(918) 592-3390 Facsimile
***ATTORNEYS FOR DEFENDANT, GENERAL ELECTRIC COMPANY***

## CERTIFICATE OF SERVICE

I certify that on the 23rd day of April, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| R. Scott Williams | Rwilliams@trsvlaw.com |
| Taylor Ryan Schmidt Van Dalsem & Williams | law@trsvlaw.com |
| 850 Boulder Towers | |
| 1437 South Boulder Avenue | |
| Tulsa, OK  74119-3640 | |
| *Attorney for Plaintiff* | |

    /s/ John H. Tucker